## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | Civil Action No. 2:22-cv-00449 |
| **Plaintiff,** | |
| **v.** | **COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT** |
| **KAY YANG, AK EQUITY GROUP LLC, and XAPPHIRE LLC,** | |
| **Defendants,** | |
| **and** | |
| **CHAO YANG,** | |
| **Relief Defendant.** | |

Plaintiff Commodity Futures Trading Commission ("Commission") alleges as follows:

### I.    SUMMARY

1.   From at least April 2017 through March 2020 (the "Relevant Period"), Kay Yang ("Yang"), individually and as the founder and chief executive officer of AK Equity Group LLC ("AK Equity") and Xapphire LLC ("Xapphire") (together, "Defendants"), engaged in a fraudulent scheme through which she solicited and received at least $15.7 million from at least 67 individuals or entities ("Pool Participants") for pooled investment vehicles that purported to trade off-exchange leveraged or margined foreign currency ("forex") contracts.

2. In soliciting prospective Pool Participants to deposit investment funds, Defendants falsely represented that: (1) Defendants successfully managed hundreds of millions of dollars in a variety of investment vehicles; (2) Defendants consistently achieved positive monthly returns; (3) 100% of Pool Participants' funds would be allocated to forex trading; and (4) Defendants would adhere to a trading strategy that included low leverage ratios and moderate trading frequencies. Defendants made these false representations orally and via email messages, text messages, instant messages, and other documents.

3. In soliciting funds from existing and prospective Pool Participants, Defendants omitted material facts, including that they routinely suffered trading losses, misappropriated Pool Participants' funds, and were not registered with the Commission.

4. To conceal and perpetuate their fraud, Defendants provided false account updates to Pool Participants that reflected the promised positive returns from Defendants' purported successful forex trading. The false account updates concealed Defendants' misappropriation, lack of trading, and trading losses. These updates were provided via email, text message, and an online client portal.

5. Finally, Defendants misappropriated Pool Participants' funds by, among other things, comingling Pool Participants' investment funds with Defendants' funds, paying for personal expenses of Yang and her family, transferring a large portion of the funds to Yang's husband, Chao Yang ("Relief Defendant"), and failing to return funds to Pool Participants when requested. As a result of Defendants' fraud and misappropriation, Pool Participants have lost most, if not all, of their funds.

6. By virtue of this conduct, and as more fully set forth below, Defendants have engaged, are engaging, and/or are about to engage in acts and practices in violation of Sections

2

4b(a)(2)(A)-(C) and 4*o*(1)of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6*o*(1), and Commission Regulations ("Regulations") 4.41(a) and 5.2(b), 17 C.F.R. §§ 4.41(a), 5.2(b) (2021).

7.    Additionally, during the Relevant Period, AK Equity and Xapphire, through Yang, each acted as a commodity pool operator ("CPO") by soliciting and accepting funds for a pooled investment vehicle that is not an eligible contract participant ("ECP"), and that engaged in retail forex transactions, without being registered with the Commission as a CPO, as required by the Act and Regulations.  AK Equity's and Xapphire's respective failures to register as a CPO violate Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021).

8.    Similarly, Yang solicited funds for participation in these pooled investment vehicles trading forex contracts, while associated with AK Equity and Xapphire as an officer, employee, or agent without being registered with the Commission as an associated person ("AP") of AK Equity and Xapphire, as required by the Act and Regulations.  Yang's failure to register as an AP of a CPO violates Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), and Regulations 3.12 and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 5.3(a)(2)(ii) (2021).

9.    Relief Defendant Chao Yang is not charged with violations of the Act.  However, he received funds from Defendants in which he had no legitimate interest or entitlement and which were derived from Defendants' fraudulent acts.  Chao Yang, therefore, must return and repay these funds.

10. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully below.

11. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel compliance with the Act, as amended, and Regulations. In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

## II. JURISDICTION AND VENUE

12. Jurisdiction. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c of the Act, 7 U.S.C. § 13a-1, provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act in the proper district court of the United States whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

13. The Commission has jurisdiction over the forex solicitations and transactions at issue in this case pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C).

14. Venue. Venue lies properly in this District pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the Defendants transacted business in the Eastern District of

4

Wisconsin, one or more of the victims resides in this District, and some of the Defendants' acts and practices in violation of the Act and Regulations occurred within this District.

### III.  THE PARTIES

15. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations promulgated thereunder.  The Commission maintains its principal office at 1155 21st Street NW, Washington, DC 20581.

16. Defendant Kay Yang is the founder and chief executive officer of Defendants AK Equity and Xapphire.  Upon information and belief, Yang resides in Mequon, Wisconsin.  Yang has never been registered with the Commission.

17. Defendant AK Equity is a Delaware limited liability company formed by Yang on March 28, 2017, with a registered office in Dover, Delaware.  Upon information and belief, AK Equity's principal place of business is in Mequon, Wisconsin.  Yang, as the founder and chief executive officer of AK Equity, controls its day-to-day operations, finances, accounts, and books and records.  AK Equity has never been registered with the Commission.

18. Defendant Xapphire is a Delaware limited liability company formed by Yang on December 19, 2018, with a registered office in Dover, Delaware.  Upon information and belief, Xapphire's principal place of business is in Mequon, Wisconsin.  Xapphire is the managing member of various entities that purportedly invested in forex and other products, including AK Equity and Xapphire Fund LLC ("Xapphire Fund").  Yang, as the founder and chief executive officer of Xapphire, controls its day-to-day operations, finances, accounts, and books and records.  Xaphhire has never been registered with the Commission.

5

19. Relief Defendant Chao Yang is an individual who resides in Mequon, Wisconsin and is the husband of Defendant Kay Yang.  He has never been registered with the Commission in any capacity.

## IV.  FACTS

**A.    Formation of the Commodity Pools and Solicitation of Pool Participants**

20. During the Relevant Period, Yang, as the founder and chief executive officer of AK Equity and Xapphire, solicited and pooled at least $15.7 million from at least 67 Pool Participants, in connection with the trading of forex contracts.

21. In March 2017, Yang founded Defendant AK Equity, which she described in a promotional brochure as "an established trade manager with a global client base."  In December 2018, Yang founded Defendant Xapphire, which she described in a promotional brochure as a "fund management company" that oversees Defendant AK Equity, Xapphire Fund, and other purported investment vehicles operated by Defendants.  Yang solicited Pool Participants to invest in forex through both AK Equity and Xapphire.

22. Prospective Pool Participants were introduced to Yang by family members, friends, or acquaintances.  Most Pool Participants were members of the local Hmong community in Wisconsin.

23. Following an introduction, Yang communicated directly with existing and prospective Pool Participants in person or via telephone, email, social media message, and text message.  In communications with prospective Pool Participants, Yang touted her purported forex trading expertise and successful track record, promised substantial returns, and minimized the risk of loss.  Yang told some prospective Pool Participants that their funds would be pooled with the funds of other participants.

6

24. Pool Participants entered into "customer account agreements" with AK Equity and/or "subscription agreements" with Xapphire on behalf of Xapphire Fund (collectively, the "Customer Agreements"). Yang signed the Customer Agreements on behalf of either AK Equity or Xapphire.

25. At the direction of Yang, Pool Participants deposited their investment funds, primarily via wire transfer, into various bank accounts in the name of, or controlled by, Yang, AK Equity, and/or Xapphire.

26. In January 2019, Yang began transferring existing client accounts from AK Equity to Xapphire. By April 2019, all trading activity conducted on behalf of the Pool Participants was executed in forex trading firm accounts in the name of Xapphire.

27. At least one Pool Participant was not an ECP and the commodity pools operated by Defendants were not ECPs, as that term is defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18).

28. On May 10, 2018, Yang filed a Notice of Claim of Exemption from Commodity Trading Advisor Registration with the National Futures Association ("NFA"), pursuant to Regulation 4.14(a)(8), 17 C.F.R. § 4.14(a)(8) (2021) on behalf of AK Equity. The exemption notice was withdrawn the following day, on May 11, 2018.

29. On March 21, 2019, Yang filed a Notice of Claim of Exemption from Commodity Pool Operator Registration with the NFA, pursuant to Regulation 4.13(a)(2), 17 C.F.R. § 4.13(a)(2) (2021), on behalf of Xapphire for Xapphire Fund. On August 26, 2019, Xapphire exceeded the total participant and total gross capital contribution thresholds for the exemption. The exemption notice was withdrawn on March 3, 2020.

7

30. On July 13, 2020, the State of Wisconsin Department of Financial Institutions, Division of Securities, issued a Final Order by Consent to Cease and Desist, Revoking Exemptions, and Imposing Disgorgement, Restitution, and Civil Penalties on Yang in connection with her operation of AK Equity and Xapphire ("WDFI Order"). Among other things, the WDFI Order required Yang to pay restitution in the amount of $16,950,776.78 to Defendants' Pool Participants, and disgorge $4,231,998.78 in profits.

31. After the publication of the WDFI Order, Yang attempted to reassure Pool Participants that she had not committed any fraud in connection with AK Equity and Xapphire. For example, Yang informed at least one Pool Participant that she would send them checks in August 2020 to comply with the order of restitution in the WDFI Order. Further, in an apparent attempt to circumvent the specific terms of the order of restitution, Yang also informed Pool Participants that if they wanted to remain invested in her forex commodity pools, they should endorse the restitution checks and return them to Yang without cashing them.

**B.     Material Misrepresentations and Omissions to Pool Participants**

32. In soliciting funds from existing and prospective Pool Participants during the Relevant Period, Yang made material misrepresentations and omissions, orally and in writing, regarding the performance of the Pool Participants' investments and her use of their funds.

33. For example, in January 2019, Yang met with a prospective Pool Participant ("Pool Participant A") and provided her with the promotional brochure for AK Equity. During this meeting, Yang fraudulently misrepresented that she managed hundreds of millions of dollars in various types of investments, including some accounts valued at over $100 million.

34. During another meeting with Pool Participant A, Yang again fraudulently misrepresented her assets under management, stating that she managed approximately $700

million in investments.  She also projected that her fund would exceed $1 billion in assets by the end of the year.

35. In truth, Yang only managed approximately $15.7 million in investments during the period April 2017 through March 2020.

36. Yang also made material misrepresentations regarding AK Equity's past performance.  For example, the AK Equity promotional brochure touted the following "Global Performance Track Record (2018)":

| Month | Rate of Return |
|---|---|
| January | 6.62% |
| February | 5.81% |
| March | 0.98% |
| April | 8.18% |
| May | 4.07% |
| June | 5.24% |
| July | 8.70% |
| August | 4.17% |

The AK Equity promotional brochure also touted the following "2018 AK General Profits":

| Month | Total Profits for US Investors (Closing Profit) |
|---|---|
| January | $291,159.33 |
| February | $381,900.72 |
| March | $28,694.30 |
| April | $289,046.83 |
| May | $170,422.81 |
| August | $1,172,205.36 |

The table omitted alleged profits for the months of June and July of 2018.  The returns represented in these tables were false.  In reality, AK Equity suffered substantial trading losses during 2018.

9

37.     Similarly, in the March 2019 meeting with Pool Participant A, Yang falsely stated that AK Equity earned profits of 40 to 50% per year, when in fact AK Equity consistently sustained net trading losses from its inception.

38.   In an effort to conceal her fraudulent scheme, Yang deflected questions regarding the claims in the AK Equity promotional brochure.  For example, in an email exchange between a potential Pool Participant ("Pool Participant B") and Yang in January 2019, Pool Participant B noted certain inconsistencies in the performance figures in AK Equity's promotional brochure. Yang dismissed these concerns, and then provided Pool Participant B with a purported account statement for one of AK Equity's other Pool Participants, noting that the supposed Pool Participant account had appreciated in value from $250,000 to $6.8 million between February 2015 and May 2017.

39. Yang's statement was false in that any net increase in Yang's assets under management was not attributable to Defendants' trading gains.  Rather, it was due to soliciting additional investments from unsuspecting Pool Participants.  From inception to January 2019, Defendants' trading activity resulted in net trading losses.

40. Yang also made material misrepresentations to potential Pool Participants about Xapphire's past performance.  For example, Yang provided Pool Participant A with a promotional brochure for Xapphire that claimed that Xapphire's "U.S. Clients" had positive average monthly investment returns, and annual investment returns ranging from 20% to 40%. However, these representations of Xapphire's supposed successful track record were for the period of January 2018 through December 2018, almost one year before Xapphire was formed. Xapphire's trading activity did not commence until May 2019.

41. Yang also made misrepresentations about the allocation of Pool Participants' investments. For example, the AK Equity promotional brochure which Yang provided to Pool Participant A stated that 100% of Pool Participants' investments of less than $5 million would be allocated to forex trading. However, of the approximately $11.9 million in net deposits that Pool Participants made in AK Equity only approximately $3.2 million was allocated to forex trading. As discussed further below, the remaining funds were either held in cash or spent by Yang on various personal expenses.

42. Yang failed to disclose to Pool Participants that AK Equity and Xapphire suffered trading losses and the extent of those losses. Specifically, AK Equity and Xapphire traded approximately $7.1 million of Pool Participant funds and suffered net trading losses of approximately $2.9 million (excluding commissions and fees paid to forex firms). Yang did not disclose that Pool Participants' investments suffered net losses.

43. Yang also made misrepresentations about Xapphire's trading strategy. For example, one of Xapphire's promotional brochures, provided to Pool Participants, states that it maintained a "[l]ow leverage (1:20 1:50)" trading strategy and traded with "[m]oderate frequency (weekly – monthly)." In fact, at least one of Xapphire's forex firm account statements indicated that the account maintained a 1:100 leverage ratio and often executed multiple transactions per day.

44. During the Relevant Period, Yang, both orally and in written account updates, periodically represented to Pool Participants that their investments had increased in value due to AK Equity's and Xapphire's successful forex trading, when in fact, these entities suffered substantial trading losses during most months.

45. For example, on June 30, 2017, Yang sent an account update via email to a Pool Participant ("Pool Participant C") purporting to show monthly performance figures. Yang wrote

11

that "we have about a good ~$21k in profit that we are looking to close[,]" and that "[i]f you do not with [sic] to take a draw at the moment, the profits will roll over into the next month…"  In reality, AK Equity's forex firm account statements indicate that trading did not commence until August 2017, therefore the AK Equity account could not have realized any of the trading gains Yang reported to pool participants.  Furthermore, the AK Equity forex firm account statements indicate that once it did begin trading in August 2017,  suffered net trading losses of approximately $150,000 during the period of August 2017 through December 2017.

46. Yang also made misrepresentations about Pool Participants' ability to withdraw funds from their accounts.  For example, the AK Equity Customer Agreements state that "Upon request of account holder written and signed and communicated to AK EQUITY GROUP LLC either by fax, email, or any other kind of communication, the company will proceed to liquidate and withdraw the funds from our prime institutional LP (liquidity provider), the funds should be available within 5-7 working days following the closure of all/any open trades, AK EQUITY GROUP LLC will immediately proceed to transfer the fund [sic] to the investor's bank account. The process may take an additional 2-5 working [sic] from the date of closing the account."

47. Contrary to these representations, Yang failed to honor Pool Participants' withdrawal requests.  For example, Pool Participant A requested a withdrawal of funds on July 27, 2020. Between July 2020 and November 2020, Pool Participant A contacted Yang approximately twenty-two times via text message regarding the status of their withdrawal request.  Yang provided a series of excuses for her failure to honor the withdrawal request, including alleged delays caused by her legal and compliance team, regulators, market conditions, bank holidays, and unresponsiveness of overseas banks and brokers.  To date, Pool Participant A has yet to receive those requested funds.

12

48. Yang failed to disclose to Pool Participants that AK Equity and Xapphire suffered trading losses or the extent of those losses. She also failed to disclose that, rather than trade forex, she misappropriated Pool Participant funds to pay for personal expenses such as vacations, gambling casino visits, car payments and shopping.

**C.  Funding, Trading and Misappropriation of Funds**

49. During the Relevant Period, Defendants solicited at least 67 Pool Participants to invest at least $15.7 million. These funds were held in bank accounts in the names of AK Equity and Xapphire.

50. Although Defendants had sporadic profitable trading months, their overall trading activity resulted in net losses that contradict the false statements and performance figures that Yang provided to prospective and existing Pool Participants. Specifically, from April 2017 to March 2020, Defendants opened trading accounts with at least five forex trading firms. Of the approximate $15.7 million that Defendants collected from Pool Participants, only approximately $7.1 million was deposited into those trading accounts. Further, the trading activity in those accounts resulted in net trading losses of at least $2.9 million. The table below illustrates Defendants' deposits and trading losses in each of those accounts during the Relevant Period.

| Forex Trading Firm | Deposits | Profits (Losses) |
| --- | --- | --- |
| Forex Firm A | $1,399.980.00 | ($609,833.02) |
| Forex Firm B | $760,000.00 | ($125,590.51) |
| Forex Firm C | $100,000.00 | ($2,245.13) |
| Forex Firm D | $1,700,000.00 | ($81,191.20 |
| Forex Firm E | $3,135,000.00 | ($2,120,996.36) |
| Total: | $7,094,980.00 | ($2,939,856.22) |

51. After accounting for those trading losses, and approximately $300,000 in commissions and fees paid to the forex firms, Defendants held approximately $12.4 million in

Pool Participants' remaining funds in banking or trading accounts. Of those remaining funds, Defendants only returned approximately $2 million to Pool Participants.

52. By contrast, Defendants spent approximately $4.8 million of the remaining funds on Yang's personal expenses. For example, bank records indicate that Yang spent over $700,000 at casinos and on gambling-related purchases, approximately $439,000 on travel and luxury hotels, and approximately $248,000 on cars and car-related expenses. Furthermore, Yang made net transfers of approximately $200,000 to bank accounts in her name, approximately $1.4 million to bank accounts in the name of her husband, Relief Defendant Chao Yang, and approximately $1 million to joint bank accounts shared with her husband.

53. Even when accounting for purported performance and management fees, Yang misappropriated at least $4 million of Pool Participants' funds.

54. At all relevant times, Yang was a signatory on AK Equity's and Xapphire's bank accounts, with certain members of Yang's immediate family acting as account co-signers. Yang had full access and was authorized to trade in the forex trading firm accounts. Accordingly, at all relevant times Yang had personal knowledge of the total amount of funds transferred to her from Pool Participants, the disposition of those funds, the trades effected in the forex trading firm accounts, and the performance of those trades.

### V. STATUTORY AND REGULATORY VIOLATIONS

### COUNT ONE

### FRAUD IN CONNECTION WITH FOREX CONTRACTS
**Violations of Sections 4b(a)(2)(A)-(C) of the Act and CFTC Regulation 5.2(b)**

55. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

14

56. Section 4b(a)(2)(A)-(C) of the Act, 7 U.SC. § 6b(a)(2)(A)-(C), makes it unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market—(A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person."

57. Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) 2018), among other things, contains three grants which make clear that the CFTC has jurisdiction over, and that certain antifraud provisions in the Act apply to, retail forex:

a. Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) "shall be subject to" the antifraud provisions of 7 U.S.C. §§ 6b and 6o, among other Sections of the Act;

b. Pursuant to 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b "shall apply to" the forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) "as if" they were a contract of sale of a commodity for future delivery; and

c. Pursuant to 7 U.S.C. § 2(c)(2)(C)(vii), "[t]his Act applies to, and the Commission shall have jurisdiction over an account or pooled investment vehicle that is offered for the purpose of trading, or that trades," forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

58. Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2021), makes it unlawful:

> for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or

in connection with any retail forex transaction: (1) To cheat or defraud or attempt to cheat or defraud any person; (2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

59. As described herein, Defendants violated Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2021), by cheating or defrauding, or attempting to cheat or defraud, other persons; issuing or causing to be issued false statements and records; and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the forex transactions alleged herein, by, among other things: (i) fraudulently soliciting Pool Participants and prospective Pool Participants by making material misrepresentations and omissions about Defendants' forex trading track record registration status; (ii) misappropriating Pool Participants' funds; and (iii) fabricating false records and account statements.

60. Defendants engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to: the use of interstate wires for transfer of funds, e-mail, websites, and other electronic communication devices.

61. Defendants engaged in the acts and practices described above knowingly, willfully, or with reckless disregard for the truth.

62. Yang acted within the course and scope of her employment, agency, or office with AK Equity and Xapphire. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021), AK Equity and Xapphire are liable as principals for Yang's violations of Section 4b(a) (2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2021).

63. Yang controlled AK Equity and Xapphire, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, AK Equity and Xapphire to commit the acts and/or omissions alleged herein. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Yang is liable for AK Equity's and Xapphire's violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2021).

64. Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as separate and distinct violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2021).

## COUNT TWO

### FRAUD BY A COMMODITY POOL OPERATOR
### AND ASSOCIATED PERSON OF A COMMODITY POOL OPERATOR
### Violations of Section 4*o*(1) of the Act and Regulation 4.41(a)

65. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

66. Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1), makes it unlawful for a CPO or AP of a CPO:

> by use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly – (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

67. Regulation 5.4, 17 C.F.R. § 5.4 (2021), states that Part 4 of the Regulations, 17 C.F.R. pt. 4 (2021), applies to any person required to register as a CPO pursuant to Part 5 of the Regulations related to off-exchange forex transactions, 17 C.F.R. pt. 5 (2021).

17

68. Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2021), makes it unlawful for any CPO, or any principal thereof, to publish, distribute, or broadcast, whether by electronic media or otherwise, any report, letter, circular, memorandum, publication, writing, advertisement, or other literature or advice that: (1) employs any device, scheme, or artifice to defraud any participant or client or prospective participant or client; or (2) involves any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client.

69. As alleged herein, during the Relevant Period, AK Equity and Xapphire, through Yang, each acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading forex contracts.

70. AK Equity and Xapphire, through Yang, each violated Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2021), in that they employed or are employing a device, scheme, or artifice to defraud prospective and existing Pool Participants or engaged or are engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon the Pool Participants or prospective Pool Participants. The fraudulent acts include those described in Count One of this Complaint, as set forth above.

71. The foregoing acts and/or omissions by Yang occurred within the scope of her employment, office, or agency with AK Equity and Xapphire. Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021), AK Equity and Xapphire are liable for Yang's violations of Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2021).

72. Yang controlled, directly or indirectly, AK Equity and Xapphire, and did not act in good faith, or knowingly induced, directly or indirectly, AK Equity and Xapphire to commit the acts and/or omissions alleged herein. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Yang is liable for AK Equity and Xapphire's violations of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2021).

73. Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2021).

## COUNT THREE

### FAILURE TO REGISTER AS A CPO
### Violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act and Regulation 5.3(a)(2)(i)

74. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

75. Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), makes it unlawful for any person, unless registered in such capacity as the Commission shall determine, to operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant (as defined by Section 1a(18) of the Act, 7 U.S.C. § 1(18)) in connection with agreements, contracts, or transactions described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (leveraged or margined forex transactions), entered into with or to be entered into with a person who is not described in item (aa), (bb), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the Act, 7 U.S.C. § 2(c)(2)(B)(i)(II) (describing counterparties such as registered futures commission merchants).

19

76. Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

77. Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021), requires any CPO engaged in retail forex transactions to register with the Commission. Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2021), defines a CPO as any person who "operates or solicits funds, securities, or property for a pooled investment vehicle . . . that engages in retail forex transactions."

78. During the Relevant Period, AK Equity and Xapphire each acted as a CPO and made use of the mails or one or more means or instrumentalities of interstate commerce in connection with its business as a CPO by operating or soliciting funds for a pooled investment vehicle that is not an ECP and that engaged in retail forex transactions. AK Equity and Xapphire engaged in this conduct without being registered with the Commission in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021).

79. The foregoing acts and/or omissions by Yang occurred within the scope of her employment, office, or agency with AK Equity and Xapphire. Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021), AK Equity and Xapphire are each liable for Yang's acts and/or omissions in violation of Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), Section 4m(1) of the Act, 7 U.S.C. § 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021).

80. Yang controlled AK Equity and Xapphire, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, AK Equity and Xapphire to commit the acts and/or omissions alleged herein. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. §

13c(b), Yang is liable for AK Equity's and Xapphire's violations of the Act and Regulations, as alleged in this count.

## COUNT FOUR

**FAILURE TO REGISTER AS AN ASSOCIATED PERSON OF A CPO**
**Violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act**
**and Regulations 3.12 and 5.3(a)(2)(ii)**

81. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

82. Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), prohibits any person from operating or soliciting funds, securities, or property for any pooled investment vehicle that is not an ECP in connection with agreements, contracts, or transactions in forex, unless registered with the Commission, with certain exceptions not applicable to Defendants.

83. Section 4k(2) of the Act, 7 U.S.C. § 6k(2), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2021), require registration with the Commission for any person who is associated with a CPO as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool or the supervision of any person or persons so engaged.

84. Regulation 3.12, 17 C.F.R. § 3.12 (2021), prohibits any person from being an AP of a CPO unless that person is registered with the Commission as an AP of the sponsoring CPO.

85. Regulation 5.1(d)(2), 17 C.F.R. § 5.1(d)(2) (2021), defines an AP, for purposes of the Part 5 of the Regulations relating to forex transactions, as any natural person associated with a CPO (as that term is defined in Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2021) as a partner,

21

officer, employee, consultant, or agent that is involved in the solicitation of funds, securities, or property, or the supervision of any such person so engaged.

86. During the Relevant Period, Yang acted as an AP of a CPO by: (i) soliciting funds, securities, or property for participation in a commodity pool operated by AK Equity and Xapphire, and (ii) operating or soliciting funds, securities, or property for the AK Equity and Xapphire pooled investment vehicles, which were not ECPs, in connection with forex transactions.  Yang engaged in this conduct without being registered with the Commission as an AP of CPOs AK Equity and Xapphire, in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(cc), 6k(2), and Regulations 3.12 and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 5.3(a)(2)(ii) (2021).

87.  The foregoing acts by Yang occurred within the scope of her employment, office, or agency with AK Equity and Xapphire.  Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021), AK Equity and Xapphire are each liable as principal for Yang's violations of the Act and Regulations, as alleged in this count.

**COUNT FIVE**

**DISGORGEMENT OF FUNDS FROM RELIEF DEFENDANT**

88. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

89. Defendants have defrauded Pool Participants and misappropriated pool funds.

90. Relief Defendant Chao Yang received funds as a result of the Defendants' fraudulent conduct and misappropriation, and has been unjustly enriched thereby.

91. Relief Defendant has no legitimate entitlement to or interest in the funds received as a result of Defendants' fraudulent conduct and/or misappropriation.

22

92. Relief Defendant should be required to disgorge funds up to the amount he received from Defendants' fraudulent conduct and misappropriation, or the value of those funds that he may have subsequently transferred to third parties.

## VI.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.      Find that Defendants violated Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2021), in connection with Count One of this Complaint.

B.      Find that Defendants violated Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2021), in connection with Count Two of this Complaint.

C.      Find that Defendants violated Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), Section 4m(1) of the Act, 7 U.S.C. § 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021), in connection with Count Three of this Complaint.

D.      Find that Defendants violated Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), Section 4k(2) of the Act, 7 U.S.C. § 6k(2), Regulation 3.12, 17 C.F.R. § 3.12 (2021), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2021), in connection with Count Four of this Complaint.

E.      Enter an order of permanent injunction enjoining Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), Section 4k(2) of the Act, 7 U.S.C. § 6k(2), Section 4m(1) of the Act, 7 U.S.C. § 6m(1), Section 4*o*(1) of

23

the Act, 7 U.S.C. § 6*o*(1), Regulation 3.12, 17 C.F.R. § 3.12 (2021), Regulation 4.41(a), 17

C.F.R. § 4.41(a) (2021), Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2021), Regulation 5.3(a)(2)(i), 17

C.F.R. § 5.3(a)(2)(i) (2021), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2021).

F.    Enter an order of permanent injunction restraining and enjoining Defendants, and

their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in

active concert with them, from directly or indirectly:

1)    Trading on or subject to the rules of any registered entity (as that term is

defined in Section la(40) of the Act, 7 U.S.C. § 1a(40));

2)    Entering into any transactions involving "commodity interests" (as that

term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)), for accounts

held in the name of any Defendant or for accounts in which any Defendant

has a direct or indirect interest;

3)    Having any commodity interests traded on any Defendants' behalf;

4)    Controlling or directing the trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account

involving commodity interests;

5)    Soliciting, receiving, or accepting any funds from any person for the

purpose of purchasing or selling any commodity interests;

6)    Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and

7)    Acting as a principal (as that term is defined in Regulation 3.1(a), 17

24

C.F.R. § 3.1(a) (2021), agent, or any other officer or employee of any

person registered, exempted from registration, or required to be registered

with the Commission except as provided for in Regulation 4.14(a)(9).

G.      Enter an order directing Defendants, as well as any third-party transferee and/or

successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits

received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading

profits derived, directly or indirectly, from acts or practices which constitute violations of the Act

and Regulations as described herein, including pre-judgment and post-judgment interest.

H.      Enter an order requiring Defendants, as well as any successors thereof, to make

full restitution to every person who has sustained losses proximately caused by the violations

described herein, including pre-judgment and post-judgment interest.

I.      Enter an order directing Defendants to pay a civil monetary penalty assessed by

the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act,

7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation

Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–

600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2021), for each violation of the Act and

Regulations, as described herein.

J.      Enter an order directing Defendants and any of their successors, holding

companies and alter egos, to rescind, pursuant to such procedures as the Court may order, all

contracts and agreements, whether implied or express, entered into between, with, or among

Defendants and any of the Pool Participants whose funds were received by Defendants as a result

of the acts and practices which constituted violations of the Act and the Regulations as described

herein.

K.      Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920, 2412(a)(2).

L.      Enter an order requiring Relief Defendant to disgorge funds up to the amount he received from Defendants' fraudulent conduct and misappropriation, or the value of those funds that he may have subsequently transferred to third parties

M.      Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.


Dated:  April 13, 2022                              Respectfully submitted,

                                                    COMMODITY FUTURES TRADING
                                                    COMMISSION

                                                    _____
                                                    Lauren Bennett, #0812160068 (MD)
                                                    Luke Marsh, #475635 (DC)
                                                    Commodity Futures Trading Commission
                                                    Division of Enforcement
                                                    1155 21st Street, N.W.
                                                    Washington D.C. 20581
                                                    (202) 418-5000
                                                    lbennett@cftc.gov
                                                    lmarsh@cftc.gov

                                                    *Attorneys for Plaintiff*