**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>KAY YANG, AK EQUITY GROUP LLC, and XAPPHIRE LLC,<br><br>    Defendants,<br><br>and<br><br>CHAO YANG,<br><br>    Relief Defendant. | Civil Action No. 2:22-cv-00449<br><br>Hon. Lynn Adelman |

## ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT <u>INJUNCTION</u>, CIVIL MONETARY PENALTIES, AND OTHER STATUTORY AND <u>EQUITABLE</u> <u>RELIEF</u>

On April 13, 2022, the Commodity Futures Trading Commission's ("Plaintiff" or "CFTC") filed a Complaint charging Defendants Kay Yang ("Defendant Yang"), AK Equity Group LLC ("AK Equity"), and Xapphire LLC ("Xapphire") (collectively, "Defendants") with violating anti-fraud and registration provisions of the Commodity Exchange Act ("Act"), <u>7 U.S.C §§ 2(c)(2)(C)(iii)(I)(cc)</u>, <u>6b(a)(2)(A)-(C)</u>, <u>6k(2)</u>, <u>6m(1)</u>, <u>6o(1)</u>, and <u>17 C.F.R. §§ 3.12</u>, <u>4.41(a)</u>, <u>5.2(b)</u>, <u>5.3(a)(2)(i)</u>, and <u>5.3(a)(2)(ii)</u> (2022). In addition, the Complaint alleged that Relief Defendant Chao Yang, Defendant Yang's husband, received funds and assets from Defendants, to which he held no legitimate interest or entitlement and which were derived from Defendants' fraudulent and violative acts. Relief Defendant Chao Yang was not charged with violations of the Act or Regulations.

1

On June 4, 2022, the CFTC served Defendant Yang with the Summons and Complaint. (ECF No. 7)  Defendant Yang's period to answer the Complaint expired on June 27, 2022.  On May 27, 2022, the CFTC served Defendant AK Equity with the Summons and Complaint through its registered agent.  (ECF No. 6)  Defendant AK Equity's period to answer the Complaint expired on June 17, 2022.  On May 27, 2022, the CFTC served Defendant Xapphire with the Summons and Complaint through its registered agent.  (ECF No. 5)  Defendant Xapphire's period to answer the Complaint expired on June 17, 2022.  On June 8, 2022, the CFTC served Relief Defendant Chao Yang with the Summons and Complaint.  (ECF No. 8) Relief Defendant Chao Yang's period to answer the Complaint expired on June 29, 2022.

None of the Defendants nor the Relief Defendant filed an answer or otherwise properly responded to the Complaint.  At the Commission's request, the Clerk of the Court entered their defaults on July 18, 2022, pursuant to Fed. R. Civ. P. 55(a).

The Commission has moved this Court to grant final judgment by default against Defendants, order permanent injunctive relief, and impose a restitution obligation and civil monetary penalty.  The Commission has further moved this Court to grant final judgment by default against Relief Defendant and order disgorgement of ill-gotten funds to which he is not entitled.

The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby:

**ORDERED** that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief against Defendants and Relief Defendant is **GRANTED**.  Accordingly, the Court enters findings of fact,

conclusions of law, and an Order of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1, as set forth herein.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Findings of Fact

#### 1. The Parties

1. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations promulgated thereunder.

2. Defendant **Kay Yang** is the founder and chief executive officer of Defendants AK Equity and Xapphire. Yang's last known address is in Mequon, Wisconsin. Yang has never been registered with the Commission.

3. Defendant **AK Equity** was a Delaware limited liability company formed by Yang on March 28, 2017, with a registered office in Dover, Delaware. AK Equity's last known principal place of business is in Mequon, Wisconsin. Yang, as the founder and chief executive officer of AK Equity, controlled its day-to-day operations, finances, accounts, and books and records. AK Equity has never been registered with the Commission.

4. Defendant **Xapphire** is a Delaware limited liability company formed by Yang on December 19, 2018, with a registered office in Dover, Delaware. Xapphire's last known principal place of business is in Mequon, Wisconsin. Xapphire is the managing member of various entities that purportedly invested in foreign currency ("forex") and other products, including AK Equity and Xapphire Fund LLC ("Xapphire Fund"). Yang, as the founder and chief executive officer of Xapphire, controls its day-to-day operations, finances, accounts, and books and records. Xapphire has never been registered with the Commission.

3

5.     Relief Defendant **Chao Yang** is the husband of Defendant Yang.  His last known address is in Mequon, Wisconsin.  He has never been registered with the Commission in any capacity.

### 2.     Factual Overview

**Defendants Fraudulently Solicited and Misappropriated Pool Participants' Funds**

6.     From at least April 2017 through March 2020 (the "Relevant Period"), Defendant Yang, individually and as the founder and chief executive officer of AK Equity and Xapphire, engaged in a fraudulent scheme through which she solicited and received at least $15.7 million from at least 67 individuals or entities ("Pool Participants") for participation in a commodity pool ("commodity pool" or "Pool") that purported to trade off-exchange, retail forex on a leveraged, margined, and/or financed basis with participants who were not eligible contract participants ("ECPs").  (ECF No. 1 ¶¶ 1, 20, 49)  Most prospective Pool Participants were members of the local Hmong community in Wisconsin, and were introduced to Yang by family members, friends, or acquaintances.  (*Id.* ¶ 22)  In soliciting funds, Defendants falsely represented that:  (1) Defendants successfully managed hundreds of millions of dollars in a variety of investment vehicles; (2) Defendants consistently achieved positive monthly returns; (3) 100% of Pool Participants' funds would be allocated to forex trading; and (4) Defendants would adhere to a trading strategy that included low leverage ratios and moderate trading frequencies.  (*Id.* ¶¶ 2, 4, 33, 41, 42, 43)  Defendants made these false representations orally and via email, text message, instant message, and other documents.  (*Id.* ¶¶ 2, 4, 23, 38, 45)  Further, Defendants omitted material facts, including that they routinely suffered trading losses, misappropriated Pool Participants' funds, and were not registered with the Commission.  (*Id.* ¶¶ 3, 36, 37, 42, 48)

7.     Defendants also misappropriated Pool Participants' funds by, among other things, comingling Pool Participants' funds with Defendants' funds, paying for personal expenses of Defendant Yang and her family, transferring a large portion of the funds to Defendant Yang's husband, Relief Defendant Chao Yang, and failing to return funds to Pool Participants when requested.  (ECF No. 1 ¶¶ 47, 52)  In total, Defendants spent approximately $4.8 million of customer funds on Defendant Yang's personal expenses.  (*Id.* ¶ 52; Decl. of Futures Trading Investigator ("Koh Decl.") ¶ 17)  For example, bank records indicate that Yang spent over $700,000 at casinos and on gambling-related purchases, approximately $439,000 on travel and luxury hotels, and approximately $248,000 on cars and car-related expenses.  (ECF No. 1 ¶ 52; Koh Decl. ¶ 17)  Additionally, Defendant Yang made net transfers of approximately $200,000 to bank accounts in her name, approximately $1.4 million to bank accounts in the name of her husband, Relief Defendant Chao Yang, and approximately $1 million to joint bank accounts shared with her husband.  (ECF No. 1 ¶ 52; Koh Decl. ¶ 17)  As a result of Defendants' fraud and misappropriation, Pool Participants have lost most, if not all, of their funds.  (ECF No. 1 ¶ 5)

8.     Moreover, to conceal and perpetuate their fraud, Defendants provided false account updates to Pool Participants that reflected the promised positive returns from Defendants' purported successful forex trading.  (ECF No. 1 ¶¶ 4, 44, 50)  The false account updates concealed Defendants' misappropriation, lack of trading, and trading losses.  (*Id.* ¶¶ 4, 44, 48)  Defendants provided these updates via email, text message, and an online client portal. (*Id.* ¶¶ 2, 4)

**Defendants Failed to Register as Required with the CFTC**

9.     During the Relevant Period, AK Equity and Xapphire, through Yang, each acted as a commodity pool operator ("CPO") by soliciting and accepting funds for a pooled investment

5

vehicle that is not an ECP for the purpose of trading in commodity interests, including retail forex on a leveraged, margined, and/or financed basis. Defendants AK Equity and Xapphire used emails, wire transfers, text messaging, and other means or instrumentalities of interstate commerce to solicit, accept, and receive Pool Participants funds for the purpose of trading forex. (ECF No. 1 ¶¶ 2, 4, 23, 38, 45)  However, during the Relevant Period, Defendants AK Equity and Xapphire were never registered as CPOs, as required by the Act and Regulations.  (*Id*. ¶¶ 17, 18)

10. Similarly, Yang acted as an associated person ("AP") of CPOs AK Equity and Xapphire by soliciting funds for participation in these pooled investment vehicles trading retail forex, while associated with AK Equity and Xapphire as an officer, employee, or agent. Defendant Yang used emails, text messaging, and other means or instrumentalities of interstate commerce to solicit, accept, and receive Pool Participant funds for the purpose of trading forex. (ECF No. 1 ¶¶ 2, 4, 23, 38, 45)  However, during the Relevant Period, Defendant Yang was never registered with the Commission as an AP of AK Equity or Xapphire, as required by the Act and Regulations.  (*Id*. ¶ 16)

### Relief Defendant Chao Yang Received Funds Derived from Defendants' Fraudulent Acts

11. Relief Defendant Chao Yang is not charged with violations of the Act.  However, during the Relevant Period, he received from Defendants approximately $1.4 million, which was derived from Defendant's fraudulent acts and in which he had no legitimate interest or entitlement.  (ECF No. 1 ¶ 52; Koh Decl. ¶ 17)  Accordingly, Relief Defendant Chao Yang is ordered to pay disgorgement as set forth below.

### B.    Conclusions of Law

#### 1.    Jurisdiction and Venue

12.    This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  (ECF No. 1 ¶ 12)  In addition, the Court has jurisdiction over the conduct and transactions at issue in this case pursuant to 7 U.S.C. § 13a-1, which authorizes the CFTC to seek injunctive and other relief in a U.S. district court against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.  (*Id*.)  The Commission has jurisdiction over the forex solicitations and transactions at issue in this case pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C).  (*Id*. ¶ 13)

13.    Venue lies properly in this District pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the Defendants transacted business in the Eastern District of Wisconsin, one or more of the victims resides in this District, and some of the Defendants' acts and practices in violation of the Act and Regulations occurred within this District.  (ECF No. 1 ¶ 14)

#### 2.    A Default Judgment is Warranted

14.    After a party's default has been entered by the clerk, the party who sought the default may file a motion requesting a default judgment.  Fed. R. Civ. P. 55(b); *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 840 (S.D. Ill. 2006).  The decision to grant a motion for default judgment is within the sound discretion of the district court.  *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1322 (7th Cir. 1983).

15.     A default judgment establishes, as a matter of law, that a defendant is "liable to plaintiff as to each cause of action alleged in the complaint." *Bruer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982).  If the Court determines that a defendant is in default, "the factual allegations of a complaint relating to liability are taken as true," although the "allegations relating to the amount of damages suffered are ordinarily not." *Dundee Cement Co.*, 722 F.2d at 1323; *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990).  A judgment by default may be entered without a hearing on damages if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, 722 F.2d at 1323.

### 3.     Defendants Committed Fraud in Connection with Forex Contracts (Count One)

16.     7 U.S.C. § 6b(a)(2)(A)-(C) makes it unlawful for any person:  (1) to cheat or defraud or attempt to cheat or defraud another person; (2) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (3) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with certain off-exchange commodity contracts. Pursuant to 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b applies to the forex agreements, contracts, or transactions offered by Defendants "as if" they were contracts of sale of a commodity for future delivery.  Further, 7 U.S.C. § 2(c)(2)(C)(ii)(I) makes the forex agreements, contracts, or transactions at issue here "subject to" 7 U.S.C. § 6b.  Finally, 7 U.S.C. § 2(c)(2)(C)(vii) makes clear that the CFTC has jurisdiction over an account or pooled investment vehicle that is offered for the purpose of forex transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

17.     In substantially identical language to 7 U.S.C. § 6b(a)(2)(A)-(C), 17 C.F.R. § 5.2(b)(1)-(3) (2022) makes it unlawful for any person, by use of the mails or any means or

instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) to cheat or defraud or attempt to cheat or defraud any person; (2) willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever. However, unlike in 7 U.S.C. § 6b(a)(2)(A)-(C), 17 C.F.R. § 5.2(b)(1)-(3) requires that the acts or omissions involve "instrumentalities of interstate commerce."

18.    Here, Defendants used instrumentalities of interstate commerce, including interstate wires, e-mail, and websites, to fraudulently solicit, misrepresent, or omit material facts, misappropriate funds, and provide false trading account statements to participants in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b).

### *Misrepresentations to Pool Participants*

19.    To establish that Defendants made fraudulent misrepresentations and/or omissions in violation of the Act, the Commission must prove three elements: (1) that a defendant misrepresented or failed to disclose certain information; (2) that the defendant acted with scienter; and (3) that the misrepresentation was material. *CFTC v. R.J. Fitzgerald & Co*., 310 F.3d 1321, 1328 (11th Cir. 2002), *cert. denied*, 543 U.S. 1034 (2004). Proof of customer reliance is not required. *See Slusser v. CFTC*, 210 F.3d 783, 785-86 (7th Cir. 2000). All three elements are established here.

### Defendants Made Misrepresentations and Misleading Statements and Omissions

20.    "Whether a misrepresentation has been made depends on the 'overall message' and the 'common understanding of the information conveyed.'" *CFTC v. Kratville*, 796 F.3d 873, 892 (8th Cir. 2015) (quoting *R.J. Fitzgerald*, 310 F.3d at 1328). Fraudulent conduct can occur during the solicitation of commodity accounts as well as in the handling of commodity

accounts.  *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 110-11 (2d Cir. 1986); *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 103-04 (7th Cir. 1977).

21.     During the Relevant Period, to induce individuals to participate in the pools, and/or to induce them to keep their funds invested in the pools, Defendants willfully misrepresented and omitted information concerning trading performance.  Among numerous other misstatements, Defendants falsely represented that:  (1) Defendants successfully managed hundreds of millions of dollars in a variety of investment vehicles; (2) Defendants consistently achieved positive monthly returns; (3) 100% of Pool Participants' funds would be allocated to forex trading; and (4) Defendants would adhere to a trading strategy that included low leverage ratios and moderate trading frequencies.  (ECF No. 1 ¶¶ 2, 4, 33, 41, 42, 43)  Further, Defendants omitted material facts, including that they routinely suffered trading losses, misappropriated Pool Participants' funds, and were not registered with the Commission.  (*Id.* ¶¶ 3, 36, 37, 42, 48)

### Defendants Acted with Scienter

22.     To establish the scienter element of fraud, the CFTC must show that Defendants' conduct was either reckless or intentional.  "'[S]cienter is established if Defendant intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care.'"  *Kratville*, 796 F.3d at 893 (quoting *R.J. Fitzgerald*, 310 F.3d at 1328).  The CFTC proves scienter by showing that the "Defendant's conduct involves 'highly unreasonable omissions or misrepresentations ... that present a danger of misleading [customers] which is either known to the Defendant or so obvious that Defendant must have been aware of it.'"  *Id.* (alterations in original) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

23.     Here, Defendants acted with the requisite scienter because they knew the

representations they made to Pool Participants were false. (ECF No. 1 ¶ 54) In particular, they knew that Defendant Yang's forex trading was not profitable and was suffering consistent monthly losses. (*Id.*) They also knew that they were not trading all of the Pool Participants' funds as they represented that they would, and rather misappropriated a portion of the funds. (*Id.*)

The Misrepresentations and Omissions are Material

24.     "'A representation or omission is material if a reasonable investor would consider it important in deciding whether to make an investment.'" *Kratville*, 796 F.3d at 895 (quoting *R.J. Fitzgerald*, 310 F.3d at 1328–29. Any fact that enables customers to assess independently the risk inherent in their investment and the likelihood of profit is a material fact. *CFTC v. Driver*, 877 F. Supp. 2d 968, 977 (C.D. Cal. 2012). Misrepresentations concerning the likelihood of profiting from trading and risk of loss "go to the heart of a customer's investment decision and are therefore material as a matter of law." *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000), *aff'd in relevant part, vacated in part sub nom. CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002); *see also Kratville*, 796 F.3d at 895. It is well recognized that "[m]isrepresentations regarding the trading record and experience of a firm or broker are fraudulent because past success and experience are material factors which a reasonable investor would consider when deciding to invest." *CFTC v. Commonwealth Fin. Group, Inc.*, 874 F. Supp. 1345, 1353-54 (S.D. Fla. 1994) (citations omitted); *see also CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 447-48 (D.N.J. 2000) (finding the promise to open trading account in customer's name, reporting of erroneous account balances and unlawful trading activity material misrepresentations that a reasonable investor would consider important).

25.     Defendants misrepresentations and omissions were material as reasonable customers would want to know that Defendant Yang was not a successful forex trader, that

Defendants had incurred consistent monthly trading losses, that the profits they reported were false, and that Defendants would not trade all of participants' funds but would rather misappropriate a portion of those funds. Accordingly, through Defendants' misrepresentations and omissions, Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

### *Misappropriation of Pool Funds*

26.     Misappropriation of investors' funds constitutes "willful and blatant" fraudulent activity that violates the anti-fraud provisions of the Act. *Noble Wealth*, 90 F. Supp. 2d at 687 (internal quotation marks and citation omitted); *see also In re Slusser*, CFTC No. 94-14, 1999 WL 507574, at *12 (CFTC July 19, 1999) (finding respondents violated 7 U.S.C. § 6b by surreptitiously retaining money in their own bank accounts that should have been traded on behalf of the investors), *aff'd in relevant part sub nom. Slusser*, 210 F.3d 783; *Driver*, 877 F. Supp. 2d at 978 (finding that "[s]oliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses, is misappropriation" and granting summary judgment to CFTC on claims that CPO's misappropriation of customer funds violated 7 U.S.C. § 6b and 6*o*). As shown above, Defendants misappropriated at least $4.8 million of Pool Participants' funds and used those funds to pay Defendant Yang's personal expenses. (ECF No. 1 ¶¶ 48, 52; Koh Decl. ¶ 17)

### *False Account Statements*

27.     Delivering, or causing the delivery of, false account statements to customers also constitutes a violation of 7 U.S.C. § 6b(a)(2)(B). *See, e.g., CFTC v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d at 500 (finding defendant violated 7 U.S.C. § 6b(a) by issuing false or misleading account statements); *CFTC v. Skorupskas*, 605 F. Supp. 923, 932-33 (E.D. Mich. 1985) (same); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1107 (C.D. Cal. 2003) (same). Here,

Defendants defrauded Pool Participants by sending, or causing to be sent, numerous statements reflecting the promised positive returns from Defendants' purported successful forex trading. (ECF No. 1 ¶¶ 4, 44, 45)

28. By the conduct described above, Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

### 4. Defendants Committed Fraud by a CPO and AP of a CPO (Count Two)

29. 7 U.S.C. § 6*o*(1) makes it unlawful for a CPO or AP of a CPO to use the mails or any other means of interstate commerce to: (A) "employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant." 7 U.S.C. § 6*o* applies to forex pools pursuant to 7 U.S.C. § 2(c)(2)(C)(iv). Unlike §§ 6b and 6*o*(1)(A), § 6*o*(1)(B) does not require "knowing" or "willful" conduct to establish liability. *See Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 678-79 (11th Cir. 1988). Section 6*o* applies to all CPOs, whether registered, required to be registered, or exempted from registration. *See, e.g.*, *Skorupskas*, 605 F. Supp. at 932. 17 C.F.R. § 5.4 (2022), states that 17 C.F.R. pt. 4 applies to any person required to register as a CPO pursuant to 17 C.F.R. pt. 5 related to off-exchange forex transactions. 17 C.F.R. § 4.41(a) (2022) makes it unlawful for any CPO to advertise in a manner that: (1) employs any device, scheme, or artifice to defraud any participant or client or prospective participant or client; or (2) involves any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client.

30. Defendants AK Equity and Xapphire acted as CPOs by soliciting and accepting funds from members of the public to be pooled for the purpose of trading forex. Similarly,

13

Defendant Yang acted as an AP of AK Equity and Xapphire by soliciting and accepting funds from prospective participants in the purported pool. The conduct constituting Defendants' violations of §6b(a), as described above, also constitutes violations of § 6*o* because AK Equity and Xapphire were CPOs and Yang acted as an AP of AK Equity and Xapphire. *See, e.g.*, *Skorupskas*, 605 F. Supp. at 932-33. Similarly, Defendants' fraudulent solicitation of funds from prospective pool participants in violation of 17 C.F.R. § 5.2 constitutes a violation of 17 C.F.R. § 4.41(a).

### 5. Defendants AK Equity and Xapphire Failed to Register as CPOs (Count Three)

31. 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) makes it unlawful for any person, unless registered in such capacity as the Commission shall determine, to operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant (as defined by Section 1a(18) of the Act, 7 U.S.C. § 1(18)) in connection with agreements, contracts, or transactions described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (leveraged or margined forex transactions), entered into with or to be entered into with a person who is not described in item (aa), (bb), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the Act, 7 U.S.C. § 2(c)(2)(B)(i)(II) (describing counterparties such as registered futures commission merchants). 7 U.S.C. § 6m(1) makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO. Similarly, 17 C.F.R. § 5.3(a)(2)(i) (2022) requires any CPO engaged in retail forex transactions to register with the Commission. 17 C.F.R. § 5.1(d)(1) (2022) defines a CPO as any person who "operates or solicits funds, securities, or property for a pooled investment vehicle . . . that engages in retail forex transactions."

14

32.     As set forth above, AK Equity and Xapphire each acted as a CPO during the Relevant Period, and made use of the mails or one or more means or instrumentalities of interstate commerce in connection with its business as a CPO by operating or soliciting funds for a pooled investment vehicle that is not an ECP and that engaged in retail forex transactions. AK Equity and Xapphire engaged in this conduct without being registered with the Commission in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1) and 17 C.F.R. § 5.3(a)(2)(i).

### 6.     Defendant Yang Failed to Register an AP of a CPO (Count Four)

33.     7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) prohibits any person from operating or soliciting funds, securities, or property for any pooled investment vehicle that is not an ECP in connection with agreements, contracts, or transactions in forex, unless registered with the Commission, with certain exceptions not applicable to Defendants. 7 U.S.C. § 6k(2) and 17 C.F.R. § 5.3(a)(2)(ii) require registration with the Commission for any person who is associated with a CPO as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool or the supervision of any person or persons so engaged. 17 C.F.R. § 3.12 (2022) prohibits any person from being an AP of a CPO unless that person is registered with the Commission as an AP of the sponsoring CPO. 17 C.F.R. § 5.1(d)(2) (2022) defines an AP for purposes of the Part 5 of the Regulations relating to forex transactions, as any natural person associated with a CPO (as that term is defined in 17 C.F.R. § 5.1(d)(1)) as a partner, officer, employee, consultant, or agent that is involved in the solicitation of funds, securities, or property, or the supervision of any such person so engaged.

34.     During the Relevant Period, Yang acted as an AP of a CPO by:  (i) soliciting funds, securities, or property for participation in a commodity pool operated by AK Equity and Xapphire, and (ii) operating or soliciting funds, securities, or property for the AK Equity and

15

Xapphire pooled investment vehicles, which were not ECPs, in connection with forex transactions. Yang engaged in this conduct without being registered with the Commission as an AP of CPOs AK Equity and Xapphire, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2), and 17 C.F.R. §§ 3.12, 5.3(a)(2)(ii).

### 7. Yang is Liable for AK Equity's and Xapphire's Violations as a Controlling Person

35. To establish controlling person liability under 7 U.S.C. §13c(b), the CFTC must show that the person possesses the requisite degree of control and either: (1) knowingly induced, directly or indirectly, the acts constituting the violation; or (2) failed to act in good faith. *CFTC v. Equity Fin. Grp. LLC*, 572 F.3d 150, 160-61 (3d Cir. 2009) (finding individual defendants liable as controlling persons for corporation's failure to register as commodity pool operator).

36. Defendant Yang, as the founder and chief executive officer of AK Equity and Xapphire, controlled the day-to-day operations, finance, accounts, and books and records of AK Equity and Xapphire. (ECF No. 1 ¶¶ 16-18) Defendant Yang directly made omissions and misrepresentations to participants and misappropriated participants' funds. Moreover, Yang knowingly induced the violations because she individually had knowledge of the wrongdoing.

37. Thus, pursuant to 7 U.S.C. §13c(b), Defendant Yang is liable for AK Equity's and Xapphire's violations of the Act and Regulations.

### 8. AK Equity and Xapphire are Liable for Yang's Violations as Principals

38. Under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2022), a principal is strictly liable for the violations of its officials, agents, or other persons acting for it within the scope of their employment or office. *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) ("[W]e have no doubt that section 2(a)(1) imposes strict liability on the principal . . . provided, of course, as the statute also states expressly, that the agent's misconduct was within the scope or

(equivalently but more precisely) in furtherance of the agency.").

39.     The foregoing acts and/or omissions by Defendant Yang occurred within the scope of her employment, office, or agency with AK Equity and Xapphire; therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2, AK Equity and Xapphire are each liable for Yang's acts, omissions, and failures in violation of the Act and Regulations.

### 9.     Relief Defendant Yang Must Disgorge Ill-Gotten Funds (Count Five)

40.     A district court may order disgorgement from a relief defendant who is not accused of wrongdoing upon a finding that he: "(1) is in possession of ill-gotten funds and (2) lacks a legitimate claim to those funds." *CFTC v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010); *see also CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-92 (4th Cir. 2002). The Commission does not need to show that the relief defendant was aware that the funds were obtained illegally. *See, e.g.*, *Walsh*, 618 F.3d at 229, n. 8.

41.     The Complaint does not accuse Relief Defendant Chao Yang of violating the Act or Commission Regulations. However, Chao Yang received from his wife approximately $1.4 million of ill-gotten funds that had been misappropriated from Pool Participants, and he has no legitimate claim to those funds. (ECF No. 1 ¶ 52; Koh Decl. ¶ 17) Relief Defendant Chao Yang has failed to establish his entitlement to the $1.4 million and is therefore required to disgorge those funds.

## II.    RELIEF GRANTED

## IT IS HEREBY ORDERED THAT:

### A.     Permanent Injunction

42.     Based upon and in connection with the conduct described above, pursuant to 7 U.S.C. § 13a-1, Defendants are permanently restrained, enjoined, and prohibited from directly or indirectly:

a.     Cheating or defrauding, or attempting to cheat or defraud, other persons;

issuing or causing to be issued false reports; willfully making or causing to

be made to other persons any false report or statement or willfully to enter

or cause to be entered for other persons any false record; and, willfully

deceiving or attempting to deceive other persons in or in connection with

any order to make, or the making of, any contract of sale of any

commodity for future delivery, or forex contract that is made, or to be

made, for or on behalf of, or with, any other person in violation of

7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3) (2022);

b.     While acting as a CPO, using the mails or any means or instrumentalities

of interstate commerce, directly or indirectly to employ any device,

scheme, or artifice to defraud any participant or prospective participant, or

to engage in any transaction, practice, or course of business which

operates as a fraud or deceit upon any participant or prospective

participant, in violation of 7 U.S.C. § 6o(1)(A)-(B) and 17 C.F.R.

§ 4.41(a) (2022);

c.     Acting as a CPO and making use of the mails or one or more means or

instrumentalities of interstate commerce in connection with its business as

a CPO by operating or soliciting funds for a pooled investment vehicle

that is not an ECP and that engages in retail forex transactions without be

registered with the CFTC in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc)

and 6m(1) and 17 C.F.R. § 5.3(a)(2)(i) (2022); and

d.     Acting as an AP of a CPO without registering with the CFTC as an AP of

18

a CPO in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2) and 17 C.F.R. § 5.3(a)(2)(ii) (2022);

43. Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

    a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

    b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022)), for thier own personal account or for any account in which they have a direct or indirect interest;

    c. Having any commodity interests traded on their behalf;

    d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2022); and/or

    g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2022)), agent or any other officer or employee of any

19

person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

**B.    Restitution**

44.    7 U.S.C. § 13a-1(d)(3) authorizes the Commission to seek, and the Court to order, "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses." Restitution exists to restore the status quo and make the injured party whole. *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (equitable restitution consists of "restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant"). Accordingly, courts calculate restitution "as the difference between what [a defendant] obtained and the amount customers have already received back." *CFTC v. Ross*, No. 09-cv-5443, 2014 WL 6704572, at *3 (N.D. Ill. Nov. 26, 2014).

45.    Here, Defendants' illegal conduct, as described herein, proximately caused Pool Participants to incur net losses totaling not less than $13,692,690.27, which is calculated as the difference between what Defendants obtained ($15,721,684.52) and the amount customers received back ($2,028,994.25). (Koh Decl. ¶¶ 14, 16) Accordingly, Defendants shall pay, jointly and severally, restitution in the amount of $13,692,690.27 ("Restitution Obligation").

46.    If the Restitution Obligation is not paid immediately, post-judgement interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order, pursuant to 28 U.S.C. § 1961.

47.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' participants, the Court appoints the National Futures

Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

48. Defendants shall make Restitution Obligation payments, and any post-judgment interest payments, under this Order to the Monitor in the name "Kay Yang Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding. The paying Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

49. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' participants identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible Pool Participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC following the instructions for civil monetary penalty payments set forth in Part II.D. below.

50. Defendants shall cooperate with the Monitor as appropriate to provide such

21

information as the Monitor deems necessary and appropriate to identify Defendants' Pool

Participants to whom the Monitor, in its sole discretion, may determine to include in any plan for

distribution of any Restitution Obligation payments. Defendants shall execute any documents

necessary to release funds that they have in any repository, bank, investment or other financial

institution, wherever located, in order to make partial or total payment toward the Restitution

Obligation.

51.     The Monitor shall provide the CFTC at the beginning of each calendar year with a

report detailing the disbursement of funds to Defendants' Pool Participants during the previous

year. The Monitor shall transmit this report under a cover letter that identifies the name and

docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading

Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

52.     The amounts payable to each Pool Participant shall not limit the ability of any

Pool Participant from proving that a greater amount is owed from Defendants or any other

person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of

any Pool Participant that exist under state or common law.

53.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each Pool Participant

of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this

Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of

the restitution that has not been paid by Defendants to ensure continued compliance with any

provision of this Order and to hold Defendants in contempt for any violations of any provision of

this Order.

54.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of

Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for

disbursement in accordance with the procedures set forth above.

**C. Disgorgement from Relief Defendant Chao Yang**

55.     Relief Defendant Chao Yang shall pay, jointly and severally with Defendants, disgorgement in the amount of $1,422,430.42 ("Disgorgement Obligation,"), which represents the amount of ill-gotten gains Chao Yang received and to which he has no legitimate claim. (Koh Decl. ¶ 17)  If the Disgorgement Obligation is not paid immediately, post-judgement interest shall accrue on the Disgorgement Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order, pursuant to 28 U.S.C. § 1961.

56.     Relief Defendant shall pay his Disgorgement Obligation by electronic funds transfer, U.S. postal money order certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Relief Defendant shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Relief Defendant shall accompany payment of the Disgorgement Obligation with a cover letter that identifies Relief Defendant and the name and docket number of this proceeding.  Relief Defendant shall simultaneously transmit copies of the cover letter and the

form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Center, 1155 21st Street NW, Washington, D.C. 20581.

### D.    Civil Monetary Penalty

57.    7 U.S.C. § 13a-1(d)(1)(A) authorizes the imposition of a CMP equal to the higher of triple a defendant's monetary gain from each violation of the Act, or $214,514 per violation.[1] "Sanctions in CFTC enforcement proceedings should be determined with regard to the gravity of the offense and the need for deterrence." *Monieson v. CFTC*, 996 F.2d 852, 862 (7th Cir. 1993). Courts routinely award significant CMPs in cases involving conduct that violates the core provisions of the Act, such as fraud. *See, e.g.*, *CFTC v. Battoo*, No. 12-cv-07127, 2016 WL 3059856, at *13 (N.D. Ill. Jan. 11, 2016) (entering a default judgment and ordering the Defendants to pay a CMP of $147 million, triple the Defendants' gain of $49 million). Severe sanctions are warranted when a defendant repeatedly violates the Act, *In re Slusser*, CFTC Docket No. 94-14, 1999 WL 507574 at *18 (CFTC July 19, 1999).

58.    This case warrants a significant civil monetary penalty against Defendants. Defendants' conduct was serious, caused significant harm to customers, and involved attempts to cover up their fraud with fake account updates. (ECF No. 1 ¶¶ 4, 44, 50) Moreover, Defendants' fraud was extensive and long-lasting. For almost three years, Defendants bilked more than 67 people (most of which were from the Hmong community) out of at least $15.7 million. (ECF No. 1 ¶¶ 1, 20, 22, 49) Further, rather than trade all customer funds as promised, Defendant Yang spent millions of dollars of customer funds on gambling and vacations and also sent a portion of those funds to her husband, Relief Defendant Chao Yang. (*Id.* ¶¶ 48, 52)

---

[1] Pursuant to the associated regulation, 17 C.F.R. § 143.8(b)(1) (2022), the allowable inflation-adjusted civil monetary penalty is $214,514 per violation of the Act (effective Jan. 15, 2023) for non-manipulation claims brought in federal injunctive actions under 7 U.S.C. § 13a-1.

Finally, by not responding to the CFTC's complaint and instead flooding the docket with improper filings including false UCC and IRS filings, Defendants offer no justification why the Court should not impose a significant civil monetary penalty.

59. Accordingly, Defendants shall pay a civil monetary penalty in the amount of $10,387,635.91 ("CMP Obligation"), which is equal to the Defendants' gains. Defendants' gains are calculated as the total Defendants obtained ($15,721,684.52), less the amount returned to Pool Participants ($2,028,994.25), trading losses ($2,939,856.22), and certain trading commissions and fees ($365,198.14). (Koh Decl. ¶¶ 14-17) If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

60. Defendants shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the CFTC and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter

that identifies Defendants and the name and docket number of this proceeding. Defendants shall

simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial

Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street,

N.W., Washington, D.C. 20581.

**E.    Miscellaneous Provisions**

61.    Partial Satisfaction:  Acceptance by the CFTC of any partial payment of

Defendants' Restitution Obligation or CMP Obligation, or Relief Defendant's Disgorgement

Obligation, shall not be deemed a waiver of their obligation to make further payments pursuant

to this Order or a waiver of the CFTC's right to seek to compel payment of any remaining

balance.

62.    Notice:  All notices required to be given by any provision in this Order

shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

      Ian McGinley
      Director, Division of Enforcement
      Commodity Futures Trading Commission
      Three Lafayette Centre
      1155 21st Street, N.W.
      Washington, DC 20581

Notice to NFA:

      Daniel Driscoll, Executive Vice President, COO
      National Futures Association
      300 S. Riverside Plaza, Suite 1800
      Chicago, IL 60606-3447

All such notices to the CFTC shall reference the name and docket number of this action.

63.    Change of Address/Phone:  Until such time as Defendants and Relief Defendant

satisfy in full their Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set

forth in this Order, Defendants and Relief Defendant shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

64.     Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

65.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants or Relief Defendant to modify or for relief from the terms of this Order.

66.     Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Order shall be binding upon Defendants and Relief Defendant, upon any person under the authority or control of any of the Defendants or Relief Defendant, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants or Relief Defendant.

**THERE BEING NO JUST REASON FOR DELAY**, the Clerk of the Court is hereby ordered to enter this Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and other Statutory and Equitable Relief forthwith and without further notice.

**IT IS SO ORDERED**, at Milwaukee, Wisconsin on this   5th   day of   June  , 2023.


  /s/Lynn Adelman                              
UNITED STATES DISTRICT JUDGE

27